862 F.2d 869
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ELVA ENTERPRISES, INCORPORATED, Plaintiff-Appellant,
v.
SOUTHERN RAILWAY COMPANY, Defendant-Appellee.
 No. 88-3961.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 5, 1988.
Decided: Nov. 23, 1988.
 
 G. Dana Sinkler (Sinkler & Boyd, on brief), for appellant.
 William Boyd Settlemyer (Hollings, Nettles & Settlemyer, P.A., on brief), for appellee.
 Before WIDENER, K.K. HALL and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Elva Enterprises, Inc. ("Elva") appeals an order of the district court granting summary judgment in favor of Southern Railway Co. ("Southern") in a breach of contract action brought by Elva against Southern. Finding no error, we affirm.
 
 
 2
 In 1981, William H. Beacham entered into a contract with Southern to provide equipment, materials, and personnel to run Southern's Intermodal Facility at Charleston, South Carolina.[1] Paragraph 12(b) of the contract gave Southern the right to terminate the contract "for any reason upon giving Contractor at least 45 days' notice."[2] On August 16, 1983, Southern gave written notice of its intention to put the Charleston facility out for bids. Elva participated in the bidding process and was ultimately awarded the contract which was executed on October 18, 1983. In addition to the termination clause contained in the original contract, the 1983 contract contained a renegotiation clause in paragraph 13:
 
 
 3
 Should there be a sudden or unusual change in working conditions or business, either party may reopen this agreement for renegotiation upon 30 days' prior written notice.
 
 
 4
 It also provided for rates that were lower than Elva's bid. Elva agreed to the lower rates in order to retain the contract since the other bids submitted to Southern were lower than Elva's original bid.[3]
 
 
 5
 Approximately a year and a half after entering into the 1983 contract, Southern once again put the contract for the Charleston facility out for bids. Apparently, bids were by invitation only. Elva was one of the invitees. Elva's bid again was considerably higher than the lowest bid. Southern notified Elva of that fact and requested that Elva adjust its bid so that it could be maintained as the contractor at the facility. Elva did adjust its bid but not to Southern's satisfaction. The bid was still considerably higher than the low bid and the contract was awarded to another contractor. As a result, on April 24, 1985, Southern notified Elva of its intent to terminate the 1983 contract as of June 15, 1985, pursuant to the 45-day notice of termination provision in the contract.
 
 
 6
 In May, 1986, Elva filed the instant action for damages against Southern for breach of contract, wrongful termination of a contract, and for violations of the South Carolina Unfair Trade Practices Act ("SCUTPA"). Southern moved for summary judgment and by order dated January 27, 1988, the court granted the motion as to each of the three causes of action. The court concluded that the language of paragraph 12(b) was plain and unambiguous and that the language in paragraph 13, the renegotiation clause, was permissive rather than mandatory and did not affect Southern's right to terminate under paragraph 12(b). The court also found that the facts supported neither a wrongful termination cause of action, nor one brought under SCUTPA. This appeal followed.
 
 
 7
 On appeal, Elva contends that the question of whether Southern breached the contract was a question for the jury and that the court erred in dismissing the other two causes of action. Upon full consideration of the record and the briefs, we find Elva's contentions without merit. The district court's well written opinion has correctly identified and applied the relevant federal and state law. We, therefore, affirm the grant of summary judgment in favor of Southern for the reasons expressed by the district court. Elva Enterprises, Inc. v. Southern Railway Co., C/A No. 2:86-1185-1 (D.S.C. Jan. 27, 1988).
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 After Beacham entered into the contract, he formed Elva Enterprises, Inc. and became the president of the company. Subsequent to Elva's formation, the company was substituted for Beacham as the contracting party
 
 
 [2]
 Paragraph 12(b) also gave Elva the right to terminate the contract after giving 45 days' prior written notice
 
 
 [3]
 Because of increasing costs, Elva had sought and eventually obtained an increase in the 1981 contract rates. The rates, however, remained a source of contention between the parties